JACOBS PC
Leo Jacobs, Esq.
8002 Kew Gardens Rd, Ste. 300
(718) 772-8704
Queens, New York 11415
leo@jacobspc.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

---------------------------X

| | | |
|---|---|---|
| SHHA LLC | : | Case No. 2:20-cv-03574-DRH-AYS |
| Plaintiff(s), | : | **SECOND AMENDED COMPLAINT** |
| v. | : | |
| OPAL HOLDINGS LLC, OPAL HOLDINGS NY LLC, HOLMAN FUNDING GROUP INC, LYON IMPORTS LLC DBA MANDEL DISTRIBUTORS, SHAYA PRAGER, CHAIM HOLMAN | : | **JURY TRIAL DEMANDED** |
| Defendant(s). | : | |

---------------------------X

Plaintiff, SHHA LLC by and through its counsel, complains, upon information and belief, as follows:

## NATURE OF THE ACTION

1. This action seeks money damages, a constructive trust for the benefit of plaintiff, declaratory relief for damages sustained by plaintiff, and for violations committed by said defendants, for their breach of contract, unjust enrichment, and, in the alternative, fraud perpetrated upon Plaintiff.

## PARTIES

2. Plaintiff SHHA, LLC ("SHHA") is a domestic limited liability company registered in Wyoming and its principal place of business is in Wyoming. SHHA's sole member,

Saad Bin Shafiq, is a citizen of Pakistan. Therefore, SHHA is a citizen of Pakistan for the purposes of diversity.

3. Defendant OPAL HOLDINGS LLC (Defendant "Opal Holdings") is a domestic limited liability company registered in New York and maintains its principal place of business in New York.

4. Defendant OPAL HOLDINGS NY LLC (Defendant "Opal Holdings NY") is a domestic limited liability company registered in New York and maintains its principal place of business in New York.

5. Defendant LYON IMPORTS LLC DBA Mandel Distributors (Defendant "Lyon") is a domestic limited liability company registered in New Jersey and maintains its principal place of business in New Jersey.

6. Defendant SHAYA PRAGER ("Prager") is a resident of New Jersey and is thus a citizen of New Jersey. Defendant Prager is the sole owner, member, and officer of Opal Holdings, Opal Holdings NY, and Lyon (collectively, "the Prager Entities").

7. For the purposes of diversity, the Prager Entities are citizens of New Jersey.

8. Defendant HOLMAN FUNDING GROUP, INC ("Holman Funding") is a domestic corporation registered in New York with its principal place of business in New York and is thus a citizen of New York.

9. Defendant CHAIM HOLMAN ("Holman") is a resident of New York and is thus a citizen of New York. Defendant Holman is the sole owner, member, and officer of Holman Funding.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over these claims under 28 U.S.C. §§ 1332(a).

11. The case is based on the parties' diversity of citizenship under 28 U.S.C. § 1332(a)(1) because it is between corporations of different states and the amount in controversy is over $75,000.

12. This Court has authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and plaintiffs' prayer for costs, including reasonable attorneys' fees.

13. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because at least one defendant is subject to this Court's jurisdiction.

**BACKGROUND**

14. This action arises out of Defendants' breach of a contract entered with SHHA. The contract concerned the sale of 1,800,000 3-ply facemasks by Defendants to non-party buyers, with Plaintiff acting as a reseller.

15. On or about June 1, 2020 Plaintiff SHHA had written communication via WhatsApp Messenger with Defendant Holman and Defendant Holman Funding, regarding the sale of the masks.

16. Defendant Holman stated that he owned, leased, or otherwise had control over warehouses in New Jersey and/or California.

17. The aforementioned warehouses contained masks, which Defendant Holman showed to Plaintiff via WhatsApp Messenger.

18. The masks were owned by Defendant Prager and the Prager Entities.

19. Prager tasked Holman with finding a buyer for the masks.

20. Prager and Holman agreed that Holman will be entitled to a commission if he is able to find a buyer for the masks.

21. Holman's cost per mask was $0.38.

22. Defendant Holman initially stated that he is able to obtain masks for a price to Plaintiff of $0.42 per mask for Plaintiff to Procure a buyer.

23. Plaintiff stated that it understood the price to be $0.40 per mask to Plaintiff, which Holman honored.

24. Defendant Holman introduced Plaintiff SHHA to Defendant Prager.

25. Defendant Holman further represented, through written communications, spoken word, and conduct, that:

i. He was Defendant Prager's agent;

ii. Defendant Prager was reliable; and

iii. He had done significant business with Defendant Prager in the past.

26. Defendant Holman further stated that Defendant Prager confirmed that SHHA will get paid their commission if they can procure a buyer for Defendant Prager's masks.

27. Defendant Prager manifested his intent to have Holman act as his agent by proceeding with the terms of the transaction and communicating with Plaintiff via email and phone calls pertaining to the transaction.

28. At all times relevant herein, Prager and the Prager Entities' conduct, including but not limited to, emails between the parties involved in the transaction, phone calls with Plaintiff, and delegation of tasks, duties and responsibilities to Holman created apparent authority for Holman to act on Prager's behalf.

29. SHHA, Prager and the Prager Entities, through Defendant Holman and Holman Funding acting as Defendant Prager's and the Prager Entities' agent, made an agreement for the supply, sale, and distribution of Defendant Prager's masks.

30. Per the agreement, Defendant Prager and the Prager Entities, through their agent, Defendant Holman and Holman Funding, agreed to pay Plaintiff SHHA a commission amounting to the difference in the sale price of the masks and the cost of the masks to SHHA.

31. Plaintiff SHHA procured a buyer for Defendant Prager and the Prager Entities, who entered into a purchase order agreement with Defendant Prager and The Prager Entities.

32. Multiple emails, WhatsApp messages, and phone calls between the Plaintiff, Defendants, and buyers ensued to confirm payment methods, delivery locations, wire confirmations, and other pertinent terms of the transaction.

33. Plaintiff SHHA served as a reseller of Defendant Prager's masks and facilitated the sale to non-party studio503 LLC, culminating in a June 9, 2020 purchase order for 1,800,000 3-ply surgical masks at $0.60 each for a total of $1,080,000. The purchase order is annexed hereto as **Exhibit A**.

34. Multiple emails, WhatsApp messages, and phone calls between Plaintiff, Defendants, and purchasers ensued due to delays in shipping the masks.

35. Specially, during one of the phone calls, Defendant Prager told Plaintiff SHHA to coordinate and resolve the delays with Defendant Holman.

36. The cost to SHHA was $0.40 per mask, for which SHHA is entitled to its commission of $0.20 per mask, for a total of $360,000.

37. Defendant Prager paid Holman for securing SHHA who then procured a buyer for the masks.

38. Plaintiff SHHA invested significant time, effort, and knowledge into the success of the sale, including, but not limited to working with additional parties, locating buyers, and salvaging the deal when the buyers wanted to withdraw.

39. Plaintiff SHHA contacted Defendant Holman and Defendant Prager multiple times through phone calls, emails, and text messages asking for the commission duly owed to SHHA, but to no avail.

40. Plaintiff SHHA and Defendant Prager spoke on the phone following the completion of the transaction. Therein, Plaintiff again repeated his demand for the duly owed commission:

a. Defendant Prager responded saying that he gave the masks to SHHA for $0.38 per mask to SHHA. SHHA corrected Prager, stating that that was Holman's price.

b. Prager agreed that the agreement with SHHA was $0.40 per mask.

c. Upon SHHA again demanding the duly owed commission, Prager stated that the price to SHHA was actually $0.50 per mask. Plaintiff told Prager that he just said it was $0.40 per mask and asked why he is saying that it is $0.50 per mask.

d. Prager responded stating that the price is $0.54 per mask, not $0.50, and that Prager paid this 6-cent difference to Holman.

41. Following the aforementioned phone call with Defendant Prager, Plaintiff contacted Holman to verify the veracity of Prager's statements.

a. Defendant Holman denied being paid, but later stated that he was paid the difference between his price of $0.38 cents per mask and Plaintiff's price of $0.40 per mask, for a total of $36,000.

b. Defendant Holman, in the same conversation, likewise stated that Defendant Prager kept the $0.20 difference for himself.

42. Defendants failed to pay the commission owed to SHHA, are refusing to pay the commission owed to SHHA, and are otherwise not responding to SHHA's demands.

**As and For Plaintiff's First Cause of Action**
**(Declaratory Relief Against Holman and Holman Funding)**

43. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

44. Plaintiff demands that the Court declare that Holman and Holman Funding acted as Prager's and the Prager Entities' agent.

45. Plaintiff demands that the Court declare that a valid contract existed between SHHA, Holman, and Holman Funding.

**As and For Plaintiffs' Second Cause of Action**
**(Declaratory Relief Against Prager and the Prager Entities)**

46. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

47. Plaintiff demands that the Court declare that a valid contract existed between SHHA, Prager, and the Prager Entities.

**As and For Plaintiffs' Third Cause of Action**
**(Unjust Enrichment)**

48. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

49. Defendants benefited from their misconduct.

50. Plaintiff SHHA provided the knowledge, insight, work, and guidance to sell 1,800,000 masks.

51. Defendants withheld the commissions from the sale from Plaintiff SHHA.

52. It is unjust for Defendants to benefit from Plaintiff in such a manner.

53. As such, Plaintiff demands a monetary judgment of $360,000 representing the commission owed to Plaintiff SHHA by Defendants.

**As and For Plaintiffs' Fourth Cause of Action**
**(Breach of Contract)**

54. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55. Plaintiff and Defendants entered into an agreement wherein Defendants agreed to pay Plaintiff SHHA a commission for procuring a buyer for the sale of the masks.

56. Plaintiff SHHA was a legal entity when the contract was entered into.

57. Plaintiff SHHA secured a buyer for the 1,800,000 masks as per the contract with Defendants.

58. The transaction was consummated.

59. Defendants refused to pay the commission per the agreement with Plaintiff SHHA and began avoiding contact with Plaintiff SHHA.

60. As such, Defendants breached the contract, and Plaintiff has been damaged.

61. The Defendants' breach was willful, intentional, and malicious.

62. Plaintiff demands a money judgment in an amount equal to the commission of $360,000, plus punitive damages for Defendants' willful breach.

**As and For Plaintiff's Fifth Cause of Action**
**(Fraud as against Prager and the Prager Entities in the alternative)**

63. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

64. Defendants falsely stated to Holman, Holman Funding, and to Plaintiff that Plaintiff would receive its duly owed commission for finding a buyer for the masks.

65. Defendants knew their representation was false at the time they made it.

66. Defendants' false representation was made for the purpose of inducing Plaintiff to rely upon it.

67. Plaintiff rightly relied upon Defendants' false representation, not knowing it was false.

68. As a result, Plaintiff was injured by at least $360,000.

69. Plaintiff demands a money judgment in an amount equal to the commission of $360,000, plus punitive damages for Defendants' fraudulent conduct.

**As and For Plaintiff's Sixth Cause of Action**
**(Fraud as against Holman and Holman Funding in the alternative)**

70. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71. Defendants falsely stated to Plaintiff that Plaintiff would receive its duly owed commission for finding a buyer for the masks.

72. Defendants knew their representation was false at the time they made it.

73. Defendants' false representation was made for the purpose of inducing Plaintiff to rely upon it.

74. Plaintiff rightly relied upon Defendants' false representation, not knowing it was false.

75. As a result, Plaintiff was injured by at least $360,000.

76. Plaintiff demands a money judgment in an amount equal to the commission of $360,000, plus punitive damages for Defendants' fraudulent conduct.

**As and For Plaintiff's Seventh Cause of Action**
**(Piercing the Corporate Veil of the Prager Entities)**

77. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78. At all times relevant herein, Defendant Prager owned and controlled The Prager Entities.

79. At all times relevant herein, Defendant Prager was the principal, founder, director, owner, chief executive officer and/or president of The Prager Entities and conducted and managed their day-to-day operations.

80. Defendant Prager was fully aware of and authorized the conduct undertaken in carrying out the day-to-day operations of The Prager Entities, including all of the conduct which is the subject of this litigation.

81. Defendant Prager abused the corporate form to further his personal interests.

82. Defendant Prager used The Prager Entities' corporate identity as a shield against personal liability and used the corporate identity as a subterfuge for illegal acts.

83. Defendant Prager used The Prager Entities to defeat the ends of justice, as justice would have required The Prager Entities to maintain sufficient insurance and/or reserves to meet foreseeable liabilities.

84. Injustice will occur if Plaintiff SHHA is not allowed to recover its damages, due to Defendant Prager being cloaked in corporate protection while not sufficiently capitalizing his companies.

85. The above-referenced conduct of Defendant Prager shows a level of control over The Prager Entities, such that this corporation was a mere instrumentality, or alter ego, of the individual defendant.

86. Defendant Prager disregarded corporate formalities in his operation of The Prager Entities.

87. Defendant Prager failed to maintain adequate company records with regard to his operation of The Prager Entities.

88. Defendant Prager undercapitalized The Prager Entities.

89. Defendant Prager transferred assets from The Prager Entities, to himself personally, as well as other companies and persons associated with him, leaving the company insufficiently capitalized to repay its foreseeable liabilities to Plaintiff SHHA.

90. Accordingly, it is appropriate to pierce the corporate veil and impose the liability of The Prager Entities directly on Defendant Prager.

**As and For Plaintiff's Eighth Cause of Action**
**(Piercing the Corporate Veil of Holman Funding)**

91. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

92. At all times relevant herein, Defendant Holman owned and controlled Holman Funding.

93. All times relevant herein, Defendant Holman was the principal, founder, director, owner, chief executive officer and/or president of Holman Funding.

94. Defendant Holman was fully aware of and authorized the conduct undertaken in carrying out the day-to-day operations of Holman Funding including all of the conduct which is the subject of this litigation.

95. Defendant Holman abused the corporate form to further his personal interests.

96. Defendant Holman used Holman Funding corporate identity as a shield against personal liability and used the corporate identity as a subterfuge for illegal acts.

97. Defendant Holman used Holman Funding to defeat the ends of justice, as justice would have required Holman Funding to maintain sufficient insurance and/or reserves to meet foreseeable liabilities.

98. Injustice will occur if Plaintiff SHHA is not allowed to recover its damages, due to Defendant Holman being cloaked in corporate protection while not sufficiently capitalizing his company.

99. The above-referenced conduct of Defendant Holman shows a level of control over Holman Funding, such that this corporation was a mere instrumentality, or alter ego, of the individual defendant.

100. Defendant Holman disregarded corporate formalities in his operation of Holman Funding.

101. Defendant Holman failed to maintain adequate company records with regard to his operation of Holman Funding.

102. Defendant Holman undercapitalized Holman Funding.

103. Defendant Holman transferred assets from Holman Funding, to himself personally, as well as other companies and persons associated with him, leaving the company insufficiently capitalized to repay its foreseeable liabilities.

104. Accordingly, it is appropriate to pierce the corporate veil and impose the liability of Holman funding directly on Defendant Holman.

**As and For Plaintiff's Ninth Cause of Action**
**(Constructive Trust)**

105. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

106. Plaintiff SHHA and Defendants held a close and fiduciary relationship.

107. Plaintiff SHHA and Defendants entered into an agreement.

108. Defendants breached the agreement by failing to pay SHHA its duly owed commission.

109. Defendants will be unjustly enriched if the Court does not declare a constructive trust for the assets and proceeds derived from the sale of masks for the benefit of SHHA.

110. As such, Plaintiff SHHA demands a constructive trust.

**[SPACE INTENTIONALLY LEFT BLANK]**

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

A. A declaratory judgment that

   a. Defendant Chaim Holman acted as Defendant Shaya Prager's agent.
   b. That a valid contract existed between SHHA, Holman and Holman Funding.
   c. That a valid contract existed between SHHA, Prager and the Prager Entities.

B. Money damages in an amount of $360,000, plus punitive damages.

C. Piercing the corporate veil of the Prager Entities.

D. Piercing the corporate veil of Holman Funding.

E. A constructive trust for the benefit of SHHA.

F. An award of costs of this litigation, including reasonable attorneys' fees.

G. Such other and further relief as this court deems just and proper.

Dated: December 30, 2020
Kew Gardens, New York

Respectfully,

JACOBS PC

/s/ Leo Jacobs

Leo Jacobs, Esq.
Eduard Kushmakov, Esq.
8002 Kew Gardens Rd, Ste. 300
Queens, New York 11415
(718) 772-8704
leo@jacobspc.com
*Attorneys for Plaintiff*