JACOBS PC
Leo Jacobs, Esq.
8002 Kew Gardens Rd, Ste. 300
(718) 772-8704
Queens, New York 11415
leo@jacobspc.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – X

| | | |
|---|---|---|
| SHHA LLC | : | Case No. 2:20-cv-03574-DRH-AYS |
| Plaintiff(s), | : | **SECOND AMENDED COMPLAINT** |
| v. | : | |
| OPAL HOLDINGS LLC, OPAL HOLDINGS NY LLC, HOLMAN FUNDING GROUP INC, LYON IMPORTS LLC DBA MANDEL DISTRIBUTORS, SHAYA PRAGER, CHAIM HOLMAN | : | **JURY TRIAL DEMANDED** |
| Defendant(s). | : | |

– – – – – – – – – – – – – – – – – – – – – – – – – X

Plaintiff, SHHA LLC by and through its counsel, complains, upon information and belief, as follows:

**NATURE OF THE ACTION**

1.     This action seeks money damages, a constructive trust for the benefit of plaintiff, declaratory relief for damages sustained by plaintiff, and for violations committed by said defendants, for their breach of contract, unjust enrichment, and, in the alternative, fraud perpetrated upon Plaintiff.

**PARTIES**

2.     Plaintiff SHHA, LLC ("SHHA") is a domestic limited liability company registered in Wyoming and its principal place of business is in Wyoming. SHHA's sole member,

Saad Bin Shafiq, is a citizen of Pakistan. Therefore, SHHA is a citizen of Pakistan for the purposes of diversity.

3.      Defendant OPAL HOLDINGS LLC (Defendant "Opal Holdings") is a domestic limited liability company registered in New York and maintains its principal place of business in New York.

4.      Defendant OPAL HOLDINGS NY LLC (Defendant "Opal Holdings NY") is a domestic limited liability company registered in New York and maintains its principal place of business in New York.

5.      Defendant LYON IMPORTS LLC DBA Mandel Distributors (Defendant "Lyon") is a domestic limited liability company registered in New Jersey and maintains its principal place of business in New Jersey.

6.      Defendant SHAYA PRAGER ("Prager") is a resident of New Jersey and is thus a citizen of New Jersey. Defendant Prager is the sole owner, member, and officer of Opal Holdings, Opal Holdings NY, and Lyon (collectively, "the Prager Entities").

7.      For the purposes of diversity, the Prager Entities are citizens of New Jersey.

8.      Defendant HOLMAN FUNDING GROUP, INC ("Holman Funding") is a domestic corporation registered in New York with its principal place of business in New York and is thus a citizen of New York.

9.      Defendant CHAIM HOLMAN ("Holman") is a resident of New York and is thus a citizen of New York. Defendant Holman is the sole owner, member, and officer of Holman Funding.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over these claims under 28 U.S.C. §§ 1332(a).

11.     The case is based on the parties' diversity of citizenship under 28 U.S.C. §
        1332(a)(1) because it is between corporations of different states and the amount in
        controversy is over $75,000.

12.     This Court has authority to grant the requested declaratory relief pursuant to 28
        U.S.C. §§ 2201 and 2202, and plaintiffs' prayer for costs, including reasonable attorneys'
        fees.

13.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391
        because at least one defendant is subject to this Court's jurisdiction.

## **BACKGROUND**

14.     This action arises out of Defendants' breach of a contract entered with SHHA. The
        contract concerned the sale of 1,800,000 3-ply facemasks by Defendants to non-party
        buyers, with Plaintiff acting as a reseller.

15.     On or about June 1, 2020 Plaintiff SHHA had written communication via
        WhatsApp Messenger with Defendant Holman and Defendant Holman Funding, regarding
        the sale of the masks.

16.     Defendant Holman stated that he owned, leased, or otherwise had control over
        warehouses in New Jersey and/or California.

17.     The aforementioned warehouses contained masks, which Defendant Holman
        showed to Plaintiff via WhatsApp Messenger.

18.     The masks were owned by Defendant Prager and the Prager Entities.

19.     Prager tasked Holman with finding a buyer for the masks.

20.     Prager and Holman agreed that Holman will be entitled to a commission if he is
        able to find a buyer for the masks.

21.     Holman's cost per mask was $0.38.

22.     Defendant Holman initially stated that he is able to obtain masks for a price to Plaintiff of $0.42 per mask for Plaintiff to Procure a buyer.

23.     Plaintiff stated that it understood the price to be $0.40 per mask to Plaintiff, which Holman honored.

24.     Defendant Holman introduced Plaintiff SHHA to Defendant Prager.

25.     Defendant Holman further represented, through written communications, spoken word, and conduct, that:

      i.    He was Defendant Prager's agent;

      ii.   Defendant Prager was reliable; and

      iii.  He had done significant business with Defendant Prager in the past.

26.     Defendant Holman further stated that Defendant Prager confirmed that SHHA will get paid their commission if they can procure a buyer for Defendant Prager's masks.

27.     Defendant Prager manifested his intent to have Holman act as his agent by proceeding with the terms of the transaction and communicating with Plaintiff via email and phone calls pertaining to the transaction.

28.     At all times relevant herein, Prager and the Prager Entities' conduct, including but not limited to, emails between the parties involved in the transaction, phone calls with Plaintiff, and delegation of tasks, duties and responsibilities to Holman created apparent authority for Holman to act on Prager's behalf.

29.     SHHA, Prager and the Prager Entities, through Defendant Holman and Holman Funding acting as Defendant Prager's and the Prager Entities' agent, made an agreement for the supply, sale, and distribution of Defendant Prager's masks.

30.     Per the agreement, Defendant Prager and the Prager Entities, through their agent, Defendant Holman and Holman Funding, agreed to pay Plaintiff SHHA a commission amounting to the difference in the sale price of the masks and the cost of the masks to SHHA.

31.     Plaintiff SHHA procured a buyer for Defendant Prager and the Prager Entities, who entered into a purchase order agreement with Defendant Prager and The Prager Entities.

32.     Multiple emails, WhatsApp messages, and phone calls between the Plaintiff, Defendants, and buyers ensued to confirm payment methods, delivery locations, wire confirmations, and other pertinent terms of the transaction.

33.     Plaintiff SHHA served as a reseller of Defendant Prager's masks and facilitated the sale to non-party studio503 LLC, culminating in a June 9, 2020 purchase order for 1,800,000 3-ply surgical masks at $0.60 each for a total of $1,080,000. The purchase order is annexed hereto as **Exhibit A**.

34.     Multiple emails, WhatsApp messages, and phone calls between Plaintiff, Defendants, and purchasers ensued due to delays in shipping the masks.

35.     Specially, during one of the phone calls, Defendant Prager told Plaintiff SHHA to coordinate and resolve the delays with Defendant Holman.

36.     The cost to SHHA was $0.40 per mask, for which SHHA is entitled to its commission of $0.20 per mask, for a total of $360,000.

37.     Defendant Prager paid Holman for securing SHHA who then procured a buyer for the masks.

38.     Plaintiff SHHA invested significant time, effort, and knowledge into the success of the sale, including, but not limited to working with additional parties, locating buyers, and salvaging the deal when the buyers wanted to withdraw.

39.     Plaintiff SHHA contacted Defendant Holman and Defendant Prager multiple times through phone calls, emails, and text messages asking for the commission duly owed to SHHA, but to no avail.

40.     Plaintiff SHHA and Defendant Prager spoke on the phone following the completion of the transaction. Therein, Plaintiff again repeated his demand for the duly owed commission:

    a. Defendant Prager responded saying that he gave the masks to SHHA for $0.38 per mask to SHHA. SHHA corrected Prager, stating that that was Holman's price.

    b. Prager agreed that the agreement with SHHA was $0.40 per mask.

    c. Upon SHHA again demanding the duly owed commission, Prager stated that the price to SHHA was actually $0.50 per mask. Plaintiff told Prager that he just said it was $0.40 per mask and asked why he is saying that it is $0.50 per mask.

    d. Prager responded stating that the price is $0.54 per mask, not $0.50, and that Prager paid this 6-cent difference to Holman.

41.     Following the aforementioned phone call with Defendant Prager, Plaintiff contacted Holman to verify the veracity of Prager's statements.

    a. Defendant Holman denied being paid, but later stated that he was paid the difference between his price of $0.38 cents per mask and Plaintiff's price of $0.40 per mask, for a total of $36,000.

     b.   Defendant Holman, in the same conversation, likewise stated that Defendant Prager kept the $0.20 difference for himself.

42.      Defendants failed to pay the commission owed to SHHA, are refusing to pay the commission owed to SHHA, and are otherwise not responding to SHHA's demands.

**As and For Plaintiff's First Cause of Action**
**(Declaratory Relief Against Holman and Holman Funding)**

43.      Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

44.      Plaintiff demands that the Court declare that Holman and Holman Funding acted as Prager's and the Prager Entities' agent.

45.      Plaintiff demands that the Court declare that a valid contract existed between SHHA, Holman, and Holman Funding.

**As and For Plaintiffs' Second Cause of Action**
**(Declaratory Relief Against Prager and the Prager Entities)**

46.      Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

47.      Plaintiff demands that the Court declare that a valid contract existed between SHHA, Prager, and the Prager Entities.

**As and For Plaintiffs' Third Cause of Action**
**(Unjust Enrichment)**

48.      Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

49.      Defendants benefited from their misconduct.

50.      Plaintiff SHHA provided the knowledge, insight, work, and guidance to sell 1,800,000 masks.

51.     Defendants withheld the commissions from the sale from Plaintiff SHHA.

52.     It is unjust for Defendants to benefit from Plaintiff in such a manner.

53.     As such, Plaintiff demands a monetary judgment of $360,000 representing the

commission owed to Plaintiff SHHA by Defendants.

**As and For Plaintiffs' Fourth Cause of Action**
**(Breach of Contract)**

54.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the

preceding paragraphs as if fully set forth herein.

55.     Plaintiff and Defendants entered into an agreement wherein Defendants agreed to

pay Plaintiff SHHA a commission for procuring a buyer for the sale of the masks.

56.     Plaintiff SHHA was a legal entity when the contract was entered into.

57.     Plaintiff SHHA secured a buyer for the 1,800,000 masks as per the contract with

Defendants.

58.     The transaction was consummated.

59.     Defendants refused to pay the commission per the agreement with Plaintiff SHHA

and began avoiding contact with Plaintiff SHHA.

60.     As such, Defendants breached the contract, and Plaintiff has been damaged.

61.     The Defendants' breach was willful, intentional, and malicious.

62.     Plaintiff demands a money judgment in an amount equal to the commission of

$360,000, plus punitive damages for Defendants' willful breach.

**As and For Plaintiff's Fifth Cause of Action**
**(Fraud as against Prager and the Prager Entities in the alternative)**

63.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the

preceding paragraphs as if fully set forth herein.

64.     Defendants falsely stated to Holman, Holman Funding, and to Plaintiff that Plaintiff would receive its duly owed commission for finding a buyer for the masks.

65.     Defendants knew their representation was false at the time they made it.

66.     Defendants' false representation was made for the purpose of inducing Plaintiff to rely upon it.

67.     Plaintiff rightly relied upon Defendants' false representation, not knowing it was false.

68.     As a result, Plaintiff was injured by at least $360,000.

69.     Plaintiff demands a money judgment in an amount equal to the commission of $360,000, plus punitive damages for Defendants' fraudulent conduct.

**As and For Plaintiff's Sixth Cause of Action**
**(Fraud as against Holman and Holman Funding in the alternative)**

70.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71.     Defendants falsely stated to Plaintiff that Plaintiff would receive its duly owed commission for finding a buyer for the masks.

72.     Defendants knew their representation was false at the time they made it.

73.     Defendants' false representation was made for the purpose of inducing Plaintiff to rely upon it.

74.     Plaintiff rightly relied upon Defendants' false representation, not knowing it was false.

75.     As a result, Plaintiff was injured by at least $360,000.

76.     Plaintiff demands a money judgment in an amount equal to the commission of $360,000, plus punitive damages for Defendants' fraudulent conduct.

**As and For Plaintiff's Seventh Cause of Action**
**(Piercing the Corporate Veil of the Prager Entities)**

77.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.     At all times relevant herein, Defendant Prager owned and controlled The Prager Entities.

79.     At all times relevant herein, Defendant Prager was the principal, founder, director, owner, chief executive officer and/or president of The Prager Entities and conducted and managed their day-to-day operations.

80.     Defendant Prager was fully aware of and authorized the conduct undertaken in carrying out the day-to-day operations of The Prager Entities, including all of the conduct which is the subject of this litigation.

81.     Defendant Prager abused the corporate form to further his personal interests.

82.     Defendant Prager used The Prager Entities' corporate identity as a shield against personal liability and used the corporate identity as a subterfuge for illegal acts.

83.     Defendant Prager used The Prager Entities to defeat the ends of justice, as justice would have required The Prager Entities to maintain sufficient insurance and/or reserves to meet foreseeable liabilities.

84.     Injustice will occur if Plaintiff SHHA is not allowed to recover its damages, due to Defendant Prager being cloaked in corporate protection while not sufficiently capitalizing his companies.

85.     The above-referenced conduct of Defendant Prager shows a level of control over The Prager Entities, such that this corporation was a mere instrumentality, or alter ego, of the individual defendant.

86.     Defendant Prager disregarded corporate formalities in his operation of The Prager Entities.

87.     Defendant Prager failed to maintain adequate company records with regard to his operation of The Prager Entities.

88.     Defendant Prager undercapitalized The Prager Entities.

89.     Defendant Prager transferred assets from The Prager Entities, to himself personally, as well as other companies and persons associated with him, leaving the company insufficiently capitalized to repay its foreseeable liabilities to Plaintiff SHHA.

90.     Accordingly, it is appropriate to pierce the corporate veil and impose the liability of The Prager Entities directly on Defendant Prager.

**As and For Plaintiff's Eighth Cause of Action**
**(Piercing the Corporate Veil of Holman Funding)**

91.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

92.     At all times relevant herein, Defendant Holman owned and controlled Holman Funding.

93.     All times relevant herein, Defendant Holman was the principal, founder, director, owner, chief executive officer and/or president of Holman Funding.

94.     Defendant Holman was fully aware of and authorized the conduct undertaken in carrying out the day-to-day operations of Holman Funding including all of the conduct which is the subject of this litigation.

95.     Defendant Holman abused the corporate form to further his personal interests.

96.     Defendant Holman used Holman Funding corporate identity as a shield against personal liability and used the corporate identity as a subterfuge for illegal acts.

97.     Defendant Holman used Holman Funding to defeat the ends of justice, as justice would have required Holman Funding to maintain sufficient insurance and/or reserves to meet foreseeable liabilities.

98.     Injustice will occur if Plaintiff SHHA is not allowed to recover its damages, due to Defendant Holman being cloaked in corporate protection while not sufficiently capitalizing his company.

99.     The above-referenced conduct of Defendant Holman shows a level of control over Holman Funding, such that this corporation was a mere instrumentality, or alter ego, of the individual defendant.

100.    Defendant Holman disregarded corporate formalities in his operation of Holman Funding.

101.    Defendant Holman failed to maintain adequate company records with regard to his operation of Holman Funding.

102.    Defendant Holman undercapitalized Holman Funding.

103.    Defendant Holman transferred assets from Holman Funding, to himself personally, as well as other companies and persons associated with him, leaving the company insufficiently capitalized to repay its foreseeable liabilities.

104.    Accordingly, it is appropriate to pierce the corporate veil and impose the liability of Holman funding directly on Defendant Holman.

## As and For Plaintiff's Ninth Cause of Action
### (Constructive Trust)

105.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

106.    Plaintiff SHHA and Defendants held a close and fiduciary relationship.

107.     Plaintiff SHHA and Defendants entered into an agreement.

108.     Defendants breached the agreement by failing to pay SHHA its duly owed commission.

109.     Defendants will be unjustly enriched if the Court does not declare a constructive trust for the assets and proceeds derived from the sale of masks for the benefit of SHHA.

110.     As such, Plaintiff SHHA demands a constructive trust.

**[SPACE INTENTIONALLY LEFT BLANK]**

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

A.  A declaratory judgment that

    a.  Defendant Chaim Holman acted as Defendant Shaya Prager's agent.
    b.  That a valid contract existed between SHHA, Holman and Holman Funding.
    c.  That a valid contract existed between SHHA, Prager and the Prager Entities.

B.  Money damages in an amount of $360,000, plus punitive damages.

C.  Piercing the corporate veil of the Prager Entities.

D.  Piercing the corporate veil of Holman Funding.

E.  A constructive trust for the benefit of SHHA.

F.  An award of costs of this litigation, including reasonable attorneys' fees.

G.  Such other and further relief as this court deems just and proper.

Dated: December 30, 2020
      Kew Gardens, New York

                                    Respectfully,

                                      JACOBS PC

                                 ___/s/ Leo Jacobs_____
                                 Leo Jacobs, Esq.
                                 Eduard Kushmakov, Esq.
                                 8002 Kew Gardens Rd, Ste. 300
                                 Queens, New York 11415
                                 (718) 772-8704
                                 leo@jacobspc.com
                                 *Attorneys for Plaintiff*

# Purchase Order   **P.O. Number:** <u>100503-005</u>   **Date:** <u>06/08/2020</u>



This Purchase Order is submitted by studio503, LLC ("**Buyer**") to the undersigned vendor ("**Seller**").  Buyer offers to purchase the goods or services described below ("**Goods**") according to the terms and conditions contained on this Purchase Order.

To confirm and accept this Purchase Order, sign and send back to Michael Walters via e-mail At <u>michael.walters@studio503.com</u>.

**Seller/Vendor:** LYON IMPORTS LLC DBA Mandel Distributors
475 Oberlin Ave South
Suite 2
Lakewood, NJ 08701

**ACCEPTED BY SELLER (INCLUDING ADDITIONAL TERMS ON REVERSE SIDE):**

Signature: _____     Date: _____
June 09, 2020

Print Name: _____     Title: _____
Shaya Prager

**Ship To:**                Payload Group, LLC 5201 Norex Drive, Chaska, MN 55318

**Ship Via:**               Best Way

**Payment Terms:**          Wire upon receipt of total number of goods

**Freight Terms:**          Prepaid / FOB Destination

**Ship Date:**              Upon receipt of Deposit. Must Arrive before 6/12/2020

**Shipping Instructions:**   Seller shall provide shipping notification upon shipping and must call for delivery appointment 48 hours prior to arrival at (612) 940-9794

| Qty. | Description | Unit Price | Total |
|---|---|---|---|
| 1.8MM | **3 Ply Surgical Mask**<br>**ASTM Level 3**<br>**FDA Certified**<br>**50 Masks / Box**<br>**2,000 Masks / Master Carton**<br>**New, Non-Returned & Free of Defects** | $ .60 | **$1,080,000.00  USD** |
|  |  | Sub Total: | $ 1.080,000.00 USD |
|  |  | Taxes: | $ NA |
|  |  | Freight: | $ Included |
|  |  | TOTAL: | $ 1,080,000,00 USD |

## TERMS AND CONDITIONS

1.   **Authorization by Buyer.**  This Purchase Order, and any amendments hereto, shall be binding upon Buyer only if Buyer has received Seller's unconditional written acceptance within 24 hours.

2.   **Delivery.**  The Goods will be delivered by Seller to Buyer at the expense of Seller, unless otherwise specified in writing and signed by an authorized agent of Buyer.  Deliveries shall be made within usual hours at the "Ship To" address above.

3.   **Receipt of Goods.**  The Goods shall be deemed received by Buyer when delivered to Buyer at the "Ship To" address above, received at that address by authorized agents of Buyer, and acknowledged in writing by such persons.

4.   **Risk of Loss.**  Seller shall bear the risk of loss until the Goods have been acknowledged by Buyer per paragraph 3.

5.   **Time is of the Essence.**  Time is of the essence for the delivery of the Goods in this Purchase Order.

6.   **No Conditional Acceptance.**  Signing this Purchase Order by Seller, or shipping Goods in response to this Purchase Order, signifies complete acceptance of its terms and bars the addition of conditions without a separate agreement signed by Buyer.

7.   **Warranty.**  Seller warrants that the Goods will be new, of merchantable quality, free of defects and damage, of good material and workmanship,not previously owned or returned and fit and sufficient for the purpose intended. That its goods and services are in compliance with all US and FDA requirements and regulations. These warranties are in addition to those implied by law and Seller hereby makes all warranties as described in the Uniform Commercial Code as adopted in Minnesota, Unites States of America.

8.   **Warranty of Title.**  Seller agrees to deliver the Goods free of any lien, claim or outstanding claim of title hostile to Seller.

9.   **Acceptance Not Waiver.**  Acceptance of Goods by Buyer is not a waiver of any action for breach of warranty or otherwise.

10.   **Defective Goods.**  Seller shall promptly remove, repair and/or replace, at Seller's expense, any Goods that Buyer designates as non-conforming or defective, for 6-months after delivery.

11.   **Payment.**  Buyer will pay 50% on 5/9/2020 and Balance of Order Upon Complete Delivery of Goods on or before 5/15/2020

12.   **Confidentiality and Non-Disclosure of Trade Secrets and Business Information.**  SELLER UNDERSTANDS THAT BUYER CONSIDERS ITS BUSINESS METHODS, MANUFACTURING TECHNIQUES, AND CUSTOMERS STRICTLY CONFIDENTIAL AND TRADE SECRETS.  Accordingly, Seller agrees not to use or disclose to anyone information concerning the products, ingredients, combination of ingredients, quantities, frequency of purchase, change in purchasing habits, or techniques employed or purchased by Buyer, whether under this Purchase Agreement or otherwise.  Further, Seller shall not use or disclose the names, identities, addresses, or other information concerning Buyer's customers to the extent disclosed to Seller by Buyer.

13.   **Indemnity.**  Seller will indemnify Buyer and hold it harmless from and against all claims, liability, loss or damage, including attorneys' fees, arising out of or related to the Goods, or acts or omissions of Seller, if caused by Seller's negligence or fault.

14.   **Insurance.**  Seller must have $3,000,000 per occurance / $6,000,000 aggregate of insurance covering the Goods subject to this Purchase Order and must have an approved Certificate of Insurance on file with Buyer and listing Buyer as an additional insured.

15.   **Force Majeure.**  Notwithstanding anything to the contrary contained herein, neither party shall be liable for any delays or failures in performance resulting from acts beyond its reasonable control including, without limitation, Acts of God, fire, flood, explosion, earthquake, or other natural forces, war, civil unrest, accident, any strike or labor disturbance, or any other event similar to those enumerated above. Notwithstanding the foregoing, in the event of such an occurrence, each party agrees to make a good faith effort to perform its obligations hereunder.

16.   **No Other Agreement.**  This Purchase Order is the full and final agreement of the parties with respect to its subject matter, and no written or oral communication between the parties before or after the execution of this Purchase Order will modify or amend the agreement.  This Purchase Order may be modified only by a written document signed by both parties.

17.   **Severability.**  Invalidity of any provision of this Purchase Order shall not affect the validity of any other provision.

18.   **Governing Law and Exclusive Venue.**  This Purchase Order shall be construed under the laws of the State of Minnesota, United States of America.  All actions or disputes shall be brought ONLY in the state or federal courts of the State of Minnesota.

19.   **Attorney's Fees.**  In the event of any legal proceeding arising out of this Purchase Order, or the performance or interpretation thereof, Buyer shall be entitled to recover its reasonable attorney's fees and costs from Seller if Buyer prevails.

20.   **Breach.**  Seller shall be liable to Buyer, in the event of breach of the warranties contained in this agreement or any other terms of this Purchase Order, for incidental and consequential damages including, but not limited to, business interruption, loss of time, delay, lost profits, and lost income.

21.   **E-Mail Execution.**  This Purchase Order, once executed, may be transmitted by e-mail and shall have the same effect as an original signature.